**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

HEFEI SHUMI KEJI YOUXIANGONGSI AND
QUANZHOUYUANCHEKEJIYOUXIANGONGSI,

               Plaintiffs,

       v.

  ARTHUR LIH AND LIFE VAC LLC,

            Defendants.

Case No. _____

**COMPLAINT**

    This action is brought under the Declaratory Judgment Act by Plaintiffs, HEFEI SHUMI KEJI YOUXIANGONGSI ("HSKY") and QUANZHOUYUANCHEKEJIYOUXIANGONGSI ("Quanzhou") (collectively as "Plaintiffs"), against Defendants, ARTHUR LIH AND LIFE VAC LLC (collectively as "Defendants"), claiming for patent non-infringement of certain Choking Rescue Devices, as defined herein ("Plaintiffs' Choking Rescue Devices" or the "Accused Products") against U.S. Patent No. 10,025,115 ("'115 Patent," Ex. A). Upon actual knowledge with respect to itself and its acts, and upon information and belief as to all other matters, Plaintiffs allege as follows:

**INTRODUCTION**

    1.    Plaintiffs HSKY and Quanzhou bring this action for a declaratory judgment of non-infringement of the '115 Patent under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. § 271 et seq. Plaintiffs seek a declaration that their anti-choking devices, as identified below, do not infringe any valid claim of the '115 Patent, which is owned and enforced by Defendants Arthur Lih and Life Vac LLC.

2.      Defendants' actions have caused—and continue to cause—significant harm to Plaintiffs as Plaintiffs' Choking Rescue Devices have been removed from Amazon's online sales platform, www.amazon.com, through the enforcement of the '115 Patent.

## PARTIES

3.      Plaintiff HSKY is a corporation organized under the laws of the People's Republic of China ("PRC"), represented by its authorized representative, Zhang Zhen Hong, with offices at Luyang District, Room 408, Building 3, No. 985 Tianhe Road, Xinlin, PRC.

4.      HSKY operates an Amazon store (Store ID: A3I19A5X6WKPL2) and sells anti-choking devices identified by Amazon Standard Identification Numbers (ASIN) B0DFQBMSJN and B0DFQBKZ9D.

5.      Plaintiff Quanzhou is a corporation organized under the laws of the PRC, with its principal place of business at No. 355, Shanwei, Shanwei Village, Tuzhai Town, Hui'an County Quanzhou City, Fujian Province, PRC.

6.      Quanzhou operates an Amazon store (Store ID: A3CVO0INIQWJP0) and sells anti-choking devices under ASINs B0BRXZ3FT2 and B0BRXZNP5T.

7.      Upon information and belief, Defendant Arthur Lih is an individual who resides at 149-09 183rd Street, Springfield Gardens, NY 11413.

8.      Upon information and belief, Arthur Lih is the listed Inventor and Applicant of the '115 Patent.

9.      Upon information and belief, Defendant Life Vac LLC is a company organized and existing under the laws of New York, with its principal office address at 120 Lake Avenue South, Nesconset, NY 11767-1060.

10.     Upon information and belief, Life Vac LLC is authorized by Arthur Lih to enforce the '115 Patent against Plaintiffs.

## JURISDICTION AND VENUE

11.     This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13.     An actual case or controversy exists between the parties to this action. Defendants' actions have caused and continue to cause significant harm to Plaintiffs as the listing of Plaintiffs' Choking Rescue Devices on www.amazon.com have been removed through Defendants' enforcement of the '115 Patent. Defendants' actions thereby give rise to an actual controversy under 28 U.S.C. § 2201.

14.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants are at home with a principle office address in this District, have committed acts of enforcement, or threatened enforcement of the '115 Patent in this District.

## FACTUAL BACKGROUND

15.     Plaintiffs manufacture and sell anti-choking devices, including those identified by ASINs B0DFQBMSJN, B0DFQBKZ9D, B0BRXZ3FT2, and B0BRXZNP5T—the Accused Products. The Accused Products are identical.

16.     Plaintiffs' products are manufactured by Zhejiang Longmed Medical Technology Co., Ltd. ("Zhejiang Longmed"), a Chinese company with a principal place of business at No. 277

Shuangshan Road, Fuxi Street, Deqing, Huzhou City, Zhejiang Province, 313200, China. HSKY and Quanzhou procure their products directly from Zhejiang Longmed.

17.     On March 19, 2025, Defendants initiated a patent dispute resolution procedure known as Amazon Patent Evaluation Express ("APEX") against the Choking Rescue Device listings of Plaintiff HSKY. (Ex. B) Defendants alleged that the Choking Rescue Devices infringed Defendants '115 Patent.

18.     APEX is a procedure that allows owners of U.S. utility patents to obtain an evaluation of patent infringement claims against products listed by third-party sellers on www.amazon.com. In APEX, the patent infringement claim is reviewed by a neutral evaluator. If the evaluator concludes that an accused product is covered by a patent, Amazon will remove that Accused Product from www.amazon.com.

19.      On or about June 17, 2025, an Amazon APEX neutral evaluation decision (No. 17444842391), Ex. C, found Plaintiff HSKY's ASINs B0DFQBMSJN and B0DFQBKZ9D to be infringing.

20.     On or about September 4, 2025, Amazon issued a takedown notice against Quanzhou, removing Quanzhou's listings for the Choking Rescue Devices from www.amazon.com, Ex. D.

21.     Upon information and belief, Amazon's takedown of Quanzhou's listings was a direct result of a report Amazon received from Defendants alleging Quanzhou's Choking Rescue Devices infringed on Defendants' '115 Patent.

22.     Plaintiffs dispute the APEX decision's finding and the Defendants' complaints and maintain that their products do not infringe any valid claim of the '115 Patent.

23.     Defendants have refused to withdraw their complaints and have continued to assert the '115 Patent against Plaintiffs' products, creating a substantial, immediate, and real controversy between the parties.

## THE '115 PATENT

24.     The '115 Patent, entitled "Choking Intervention Device and Method of Use Thereof," issued on August 21, 2018, and names Arthur Lih as inventor.

25.     The '115 Patent purports to cover certain anti-choking devices comprising a bellows assembly, facemask, and relief valve.

## COUNT I

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '115 PATENT)

26.     Plaintiffs incorporate by reference the allegations set forth above in this Complaint as if fully set forth herein.

27.     An actual, continuing and justiciable controversy exists between Plaintiffs and Defendants concerning the non-infringement of the '115 Patent by Plaintiffs' Choking Rescue Devices, as evidenced by Defendants' allegations of infringement reported to Amazon and in the APEX proceeding, as set forth above.

28.     Plaintiffs' Choking Rescue Devices do not infringe any valid claim of the '115 Patent because they fail to satisfy one or more required elements of independent claims 1 and 12. The Accused Products differ materially from the claimed invention in both structure and operation.

29.     The Accused Products fail to meet at least two independent limitations required by the asserted claims of the '115 Patent.

30.    **First**, the claims require "at least one relief valve configured to allow air to escape from inside the bellows assembly when the bellows is compressed and prevent air from entering the bellows assembly when the bellows is expanded." As will be further explained, the Accused Products do **_not_** possess at least one "relief valve" configured as claimed. Therefore, the Accused Products do **_not_** infringe the '115 Patent.

31.    **Second,** the '115 Patent requires a discrete, externally mounted relief valve "disposed on" the bellows assembly or facemask. But the Accused Products do not include any such relief valve. Instead, they employ only a handle-embedded one-way valve located above the bellows opening, which is not accessible or visible from the exterior and does not perform the function of the claimed relief valve.

32.    The prosecution history for the '115 Patent makes clear that the claimed "relief valve" is a critical and distinguishing feature of the patented device. During prosecution, the applicant overcame prior art rejections—specifically over Torti (U.S. Pat. No. 4,768,237) and Stevenson (WO 2007/073211)—by amending the claims to require a relief valve "disposed on at least one of (i) the bellows assembly and (ii) the facemask." *See* claims 1 and 12.

33.    This "disposed on" language was not incidental—it was essential to distinguish the claimed invention from prior art devices that merely included inline valves within the airflow pathway, such as the handle-embedded check valve in Torti's plunger device and the pathway one-way valves in Stevenson's choking and resuscitation device.  The relief valve, as claimed, must be external to the inline portion of the device, venting directly to the atmosphere from the bellows or facemask, rather than simply regulating flow within the device's internal airway.

34.    Torti (U.S. Pat. No. 4,768,237) Figure 2 (*see* below as Ex. E) depicts a rigid, syringe-type suction device comprising a cylinder, a reciprocating piston/handle, and an inline

6

check valve positioned within the airflow pathway (including in the piston/handle assembly). Air is directed through the internal passage of the plunger mechanism; no discrete, externally mounted relief valve is shown or taught on the exterior of the suction body or mask. Torti's valve architecture regulates flow entirely inline and internal to the device.



35.    Stevenson (WO 2007/073211) Figure 7 (*see* below as Ex. F) depicts a facemask and bellows/resuscitator arrangement with one-way valves positioned in the connector/pathway between the bellows and the patient interface. As in Torti, Stevenson's valves are inline within the airflow path and operate only within the internal airflow pathway.



**FIGURE 7**

36.    Together, the figures and teachings of Torti and Stevenson disclose all of the features of the Accused Products—namely, a rigid cylinder/piston (or bellows-like body) with a user-operated plunger or handle, a facemask interface, and one-way valves located inline at or near the opening/connector. The Accused Products mirror this combined configuration: a rigid syringe-type cylinder with a knurled piston rod used for actuation that compresses the gas in the bellows and as a handle, plus an internal, inline one-way valve at the opening of the handle that regulates flow within the airway path, and no discrete, external relief valve on the bellows assembly or facemask.

37.    ***Third,*** the '115 Patent requires "a handle provided on the bellows." Life Vac's device, for example, has a handle integrated on a bellows wall. But the Accused Products do not

8

include any such handle on the bellows. Instead, they employ only a knurled piston rod separate from a cylinder—not a handle on or within the bellows. Therefore, the Accused Products do not infringe the '115 Patent for a third reason.

38.     Below are claim element-by-claim element comparisons of the '115 Patent independent claims, the Life Vac product, and the Accused Products.

### A. <u>Claim 1 (Ex. G)</u>

| '115 Patent Limitations Claim 1 | Life Vac's Theoretical Construction[1] | Accused Products (B0DFQBMSJN / B0DFQBKZ9D / B0BRXZ3FT2 / B0BRXZNP5T) | Result |
|---|---|---|---|
| A choking intervention device, comprising: | A device capable of removing an obstruction from a choking person | A device capable of removing an obstruction from a choking person | Met |
| a bellows assembly configured to clear an object obstructing a breathing passage of a choking victim, comprising: | Flexible, collapsible bellows body with accordion folds | Flexible-looking body beneath a rigid handle with folds | Met |
| a bellows having a base with an opening configured to provide an access to an interior volume of the bellows assembly; | Opening at base of bellows for airflow and mask connection | Opening at top of piston rod/handle, with internal one-way valve | ***NOT MET*** |
| a handle provided on the bellows at a | Handle integrated on the bellows wall | Knurled piston rod separate from cylinder; | ***NOT MET*** |

---

[1] References to the LifeVac device are provided solely as a comparator to aid claim construction and context. Plaintiffs do not allege that the LifeVac device is an accused product in this action.

| '115 Patent Limitations Claim 1 | Life Vac's Theoretical Construction[1] | Accused Products (B0DFQBMSJN / B0DFQBKZ9D / B0BRXZ3FT2 / B0BRXZNP5T) | Result |
|---|---|---|---|
| side opposite the base; and, | | not a handle on the bellows | |
| a facemask coupled to the base of the bellows and configured to enclose the choking victim's mouth and nose; and | Facemask attaches to bellows base | Facemask attaches to base of cylinder | Met |
| at least one relief valve configured to allow air to escape from inside the bellows assembly when the bellows is compressed and prevent air from entering the bellows assembly when the bellows is expanded; | Discrete, externally mounted relief valve (*see* Figs. 1 (element 108), 4 (element 410)); vents to atmosphere on compression, blocks on expansion  | One-way valve located internally at the top of the piston rod/handle above the bellows opening; no external relief valve  | ***NOT MET*** |

| '115 Patent Limitations Claim 1 | Life Vac's Theoretical Construction[1] | Accused Products (B0DFQBMSJN / B0DFQBKZ9D / B0BRXZ3FT2 / B0BRXZNP5T) | Result |
|---|---|---|---|
| wherein the at least one relief valve is disposed on at least one of the bellows assembly, and the facemask. |  Life Vac calls these external relief valves (vents) disposed on the device a "Patented One Way Valve – Prevents air from being pushed through the mask." |  The Accused Products lack these external relief valves (vents) disposed on the device. | ***NOT MET*** |

B.  **Claim 12 (Ex. H)**

| '115 Patent Limitations Claim 12 | Life Vac's Theoretical Construction | Accused Products (B0BRXZ3FT2 / B0BRXZNP5T) | Result |
|---|---|---|---|
| A choking intervention device, comprising: | A device capable of removing an obstruction from a choking person | A device capable of removing an obstruction from a choking person | Met |
| a bellows assembly configured to clear an object obstructing a breathing passage of a choking victim, comprising: | Flexible, collapsible bellows body with accordion folds | Flexible-looking body beneath a rigid piston rod/handle with folds | Met |
| a bellows having a base with an opening configured to provide an access | Opening at base of bellows for airflow and mask connection | Opening at top of piston rod/handle, with internal one-way valve | Met |

| '115 Patent Limitations Claim 12 | Life Vac's Theoretical Construction | Accused Products (B0BRXZ3FT2 / B0BRXZNP5T) | Result |
|---|---|---|---|
| to an interior volume of the bellows assembly and dimensioned to be attached to a facemask via a facemask connector; | | | |
| a handle provided on the bellows at a side opposite the base; and, | Handle integrated on the bellows wall | Knurled piston rod separate from cylinder; not a handle on the bellows | Not Met |
| a relief valve configured, when the facemask is positioned over a person's mouth and nose, to allow air to escape from inside the bellows assembly when the bellows is compressed from movement of the handle toward the opening of the bellows and prevent air from entering the bellows assembly when the bellows expands from movement of the handle away from the opening of the bellows; | Discrete, externally mounted relief valve (*see* Figs. 1 (element 108), 4 (element 410)); vents to atmosphere on compression, blocks on expansion  | One-way valve located internally in the piston rod/handle above the bellows opening; no external relief valve  | ***NOT MET*** |

| '115 Patent Limitations Claim 12 | Life Vac's Theoretical Construction | Accused Products (B0BRXZ3FT2 / B0BRXZNP5T) | Result |
|---|---|---|---|
| wherein the relief valve is disposed on at least one of the bellows assembly, and the facemask. |  Life Vac calls these external relief valves (vents) disposed on the device a "Patented One Way Valve – Prevents air from being pushed through the mask." |  The Accused Products lack external relief valves (vents) disposed on the device. | ***NOT MET*** |

39. During prosecution of the '115 Patent, the Examiner relied on Torti and Stevenson to reject the then-pending claims as reading on devices with inline valve arrangements. To overcome these references, the applicant imported former claim 9's limitation—"disposed on"—into independent claims 1 and 12, thereby requiring that "at least one relief valve" be disposed on the exterior of the bellows assembly or the facemask (i.e., an external, discrete structure venting to atmosphere), and expressly distinguishing over Torti's and Stevenson's inline valves.

40. The Accused Products thus represent precisely the Torti/Stevenson combination the applicant had to overcome: an inline, internal valve at the opening/connector with no externally mounted relief valve on the bellows or mask. By the applicant's amendment and arguments, any construction that sweeps back in an inline valve at the opening is foreclosed by prosecution history

estoppel. Consequently, the Accused Products cannot satisfy the "relief valve … disposed on" limitation of claims 1 and 12, either literally or under the doctrine of equivalents.

41.    And this distinction is not merely semantic. The relief valve's placement and function—allowing air to escape from the bellows assembly to the atmosphere during compression and preventing air from entering during expansion—are what enable the patented device to generate targeted suction without forcing air into the airway, thereby improving safety and efficacy.

42.    The Accused Products do not meet this critical claim limitation.  The only valves inside the Accused Products are inline, located within the connector tube, and do not provide an external vent or relief mechanism on the bellows assembly or facemask as required by the claims. Instead, these inline valves merely regulate the flow of air within the device, like the prior art references, Stevenson and Torti, that were rejected during prosecution.

43.    Therefore, the Accused Products lack the "relief valve" as properly construed in view of the intrinsic record and do not infringe the asserted claims of the '115 Patent, either literally or under the doctrine of equivalents.  The "disposed on" feature is not only a technical requirement but the very element that enables the patented device to function as envisioned, and its absence in the Accused Products is dispositive.

44.    Here, the lack of a relief valve disposed on the bellows assembly or facemask and the presence of only an internal one-way valve at the bellows opening—rather than the discrete, externally mounted relief valve required by the claims—mean that the Accused Products omit multiple required limitations. As a result, there can be no literal infringement of claims 1, 12, or any dependent claim of the '115 Patent. *See Southwall Techs., Inc. v. Cardinal IG Co*., 54 F.3d 1570, 1575 (Fed. Cir. 1995) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly.").

45.    Accordingly, Plaintiffs' Choking Rescue Devices do not infringe any valid claim of the '115 Patent, either literally or under the doctrine of equivalents.

46.    As mentioned, each of the Plaintiffs' Choking Rescue Devices, the Life Vac device, and the device described in the '115 Patent operate by generating negative pressure (i.e., suction) to assist in clearing airway obstructions. But the Accused Products do not possess the "relief valve" as required by the claims of the '115 Patent. Instead, the Accused Products employ a one-way valve located at the opening in the top of the handle above the opening of the bellows, which is entirely internal and apart from the bellows and ***not disposed on*** the exterior of the bellows assembly or facemask.

47.    The '115 Patent claims, as confirmed by the intrinsic record—including the claim language, specification, figures, and prosecution history—require that the "relief valve" be a distinct structure "***disposed on***" at least one of the bellows assembly or the facemask. *See, e.g.*, Figs. 1 (element 108) and 4 (element 410) of the '115 Patent, which illustrate the relief valve as a separate, externally mounted component. The claims also separately recite the bellows "opening," which provides access to the interior volume and to which the facemask connector attaches. The specification and figures consistently distinguish the "relief valve" from the "opening." *See* the '115 Patent.

48.    The '115 Patent's prosecution history confirms this distinction and is dispositive. During examination, the applicant added the "relief valve" as an additional limitation to the claims, whereas the "opening" was already present in the original claim language. *See, e.g.,* Amendment and Remarks in Response to Office Action dated September 19, 2017, at pp. 7–13. The applicant emphasized that the relief valve must be a discrete, externally mounted structure, as depicted in the figures (*see* Figs. 1 (element 108) and 4 (element 410)), and not the bellows opening or an

internal valve. The applicant specifically argued that the prior art (i.e., Stevenson) did not disclose a relief valve "disposed on" the bellows assembly or facemask but instead used a different valve structure at the bellows opening. The examiner ultimately allowed the claims only after they were amended to require the relief valve be "disposed on" the bellows assembly or facemask and cited this limitation as a reason for allowance. *See* Notice of Allowability, March 26, 2018.

49.     By prosecution history estoppel, the bellows opening or piston rod/handle above the bellows opening cannot be the locus of the relief valve. The applicant's addition of the relief valve limitation and arguments distinguishing the relief valve from the opening during prosecution preclude any construction that would equate the bellows opening—or any one-way valve located at the opening—with the claimed relief valve. The one-way valve in the Accused Products, which is located in the piston rod/handle above the bellows opening, therefore cannot satisfy the "relief valve" limitation, either literally or under the doctrine of equivalents.

50.     The working examples and figures of the '115 Patent further confirm this reading. Figures 1 and 4 show the relief valve (elements 108 and 410) as a discrete, externally mounted structure __*on*__ the bellows assembly or facemask, separate from the bellows opening (element 116). The specification confirms that "the relief valve 108 may be positioned at any suitable location __*on*__ the bellows assembly 102, such as the base 114 of the bellows assembly 102, __*top*__ of the "handle provided on the bellows 106" and "the relief valve 410 may be positioned at any suitable location __*on*__ the facemask 408. In one example, the relief valve is positioned __*on*__ the connecter 414." '115 Patent at col. 5, ll. 50-52 and col. 6, ll. 13-16 (emphasis added). Nowhere does the '115 Patent enable the relief valve to be the same as—much less __*on or inside of*__—opening 108. In fact, the Accused Products, as shown in the product images (Working Principle and Device Features images below, Exs. I and J), lack any such relief valve in these locations.

51.     Because the Accused Products lack the required relief valve that is disposed **_on_** the bellows assembly or facemask (i.e., external to the device's inline air passage), they do not meet every limitation of independent claims 1 and 12. Therefore, Plaintiffs' Choking Rescue Devices do not infringe any valid claim of the '115 Patent, either literally or under the doctrine of equivalents.

52.     In addition, the working principle of Plaintiffs' Choking Rescue Devices is fundamentally different from that of the device claimed in the '115 Patent. *See* Working Principle Image below, Ex. I. The Accused Products are functionally analogous to a bag-valve mask or a pocket mask with a **_one-way valve_**.



**WORKING PRINCIPLE**

When compressing the unit, air iexpelled through the exhaust valve above the handle. Avoid pushing objects further into the airway.

Pull up the device to create a one-way suction, to remove food or objects left behind.

53.     In contrast, the '115 Patent is directed to a collapsible, accordion-style bellows and a unidirectional relief valve that vents air only during compression and blocks air entry during expansion. And the relief valve, as claimed, must be "disposed on" the external surface of the bellows assembly or facemask, accessible from the outside.

54.     The distinction between the devices is not merely academic—it is central to the non-infringement analysis. The Accused Products' mechanism is fundamentally incompatible with the "relief valve" approach required by the '115 Patent. The Accused Products do not, and cannot, provide the function, way, and result claimed by the required "relief valve" disposed on either the facemask or bellows assembly.

55.     In function, the '115 Patent's relief valve releases air from the bellows or facemask surface into the atmosphere during compression and blocks air entry during expansion to regulate pressure and enable controlled suction. But the Accused Products only use one-directional flow within an inline airway and do not vent from the device surface into the atmosphere. In this way, the '115 Patent requires a discrete component "disposed on" the exterior of the bellows assembly or the facemask to vent externally, whereas the Accused Products' one-way valve is embedded within the handle/inline passage above the bellows opening and does not vent externally, but rather internally. In result, the patented configuration yields a controlled, pressure-relieved suction, whereas the accused configuration produces a maximized, airtight suction with no external pressure relief.

56.     This difference in working principle and intended use is dispositive—the Accused Products do not practice the claimed invention's structure—by function, way, or result. Therefore, the Accused Products cannot infringe the '115 Patent, either literally or under the doctrine of equivalents. *See Southwall* at 1575; *Warner-Jenkinson Co. v. Hilton Davis Chem. Co*., 520 U.S. 17, 29 (1997).

57.     As mentioned, claim 1 of the '115 Patent requires that "at least one relief valve" be "disposed on" the bellows assembly or the facemask. *See* the '115 Patent. This language mandates that a relief valve must be physically located on, and accessible from, the exterior of the device. In

contrast, Plaintiffs' Choking Rescue Devices incorporate a one-way valve entirely within the inline passage of the bellows, fully embedded and inaccessible from the outside. *See* Device Features Image below ("One Way Valve"), Ex. J. The one-way valve is housed internally and cannot be seen, reached, or manipulated from the device's exterior. As such, the Accused Products do not meet the "disposed on" limitation, as that term cannot reasonably be interpreted to include a wholly internal component that is neither affixed to nor protruding from any outer surface. *See Warner-Jenkinson* at 29 ("Each element of a claim is material and essential, and must be found in the accused device.").



58.    In addition, Plaintiffs' Choking Rescue Devices also do not infringe under the doctrine of equivalents for at least a ***second reason***. The function-way-result test is not satisfied because an internally embedded valve, sealed within the bellows, operates differently from a surface-mounted valve, as it cannot be inspected, accessed, or adjusted externally. The '115

Patent's specification and examples consistently describe and illustrate the relief valve as being located on an external surface, and do not contemplate or disclose a valve buried within the device.

59.    Likewise, the Accused Products' and Life Vac's use of a one-way valve located within the device performs a different function, in a different way, and achieves a different result than the relief valve described and required by the '115 Patent.

60.    The claimed relief valve in the '115 Patent is designed to provide a "***substantially***" airtight seal by venting air to the atmosphere during compression of the bellows, thereby preventing excessive positive pressure from being delivered to the patient, and to block air entry during expansion, enabling the creation of negative pressure (i.e., suction) for airway clearance. In contrast, the one-way valve in the Accused Products and Life Vac is designed solely to maintain an airtight seal and to direct ***all*** airflow in a single direction—out of the patient's airway—without providing any venting to the atmosphere during compression. Its function is to maximize suction by preventing any air from returning to the mask or airway, not to regulate or relieve pressure as the claimed relief valve does.

61.    The relief valve of the '115 Patent is a discrete, externally mounted structure "disposed on" the bellows assembly or facemask, as shown in Figs. 1 (element 108) and 4 (element 410). It operates by opening to atmosphere during compression and closing during expansion, physically allowing air to escape to the environment and then sealing to enable suction. By contrast, the one-way valve in the Accused Products and Life Vac is embedded internally at the bellows opening and is not accessible or visible from the exterior. It operates by opening only to allow air and any obstruction to be expelled from the patient but never allows air to vent to the atmosphere at the relief valve location, nor does it provide any external pressure relief.

62.     The result of the relief valve in the '115 Patent is a controlled, safe suction that prevents excessive positive pressure from being applied to the patient and allows for atmospheric venting, thereby reducing the risk of injury and ensuring the device functions as intended for airway clearance. The result of the one-way valve in the Accused Products, however, is a maximized, forceful suction with **no** external, atmospheric venting or pressure relief outside of the inline valve, which is a more forceful mechanism than that claimed in the '115 Patent. Therefore, the Accused Products do not achieve the same result of controlled pressure regulation and slower airway clearance as the '115 Patent and the Life Vac device.

63.     The result of the relief valve in the '115 Patent and the Life Vac device is a controlled, safe suction that prevents excessive positive pressure from being applied to the patient and allows for atmospheric venting via externally disposed vents, thereby reducing the risk of injury and ensuring the device functions as intended for airway clearance. In contrast, the Accused Products' outlet valve, which incorporates one-way valve functionality, produces maximized, forceful suction and does not vent through an external portion of the device. The Accused Products **_only_** release air upward, through the opening at the top of the handle.

64.     Further, the Life Vac relief valve operates differently than the Accused Products' one-way valve. The Life Vac relief valve splits the airflow, with one path venting to the atmosphere through vents that are externally located on a base, and the other path taking air away from the patient's mouth. Unlike the '115 Patent, however, the Accused Products do not vent air via externally disposed vents on the devices. And, therefore, the Accused Products do not achieve the same result of controlled pressure regulation and gradual airway clearance as claimed. In other words, the Accused Products do not provide controlled pressure regulation and slower airway clearance via vents "disposed on" the devices—a critical feature to the patented invention.

65.     This distinction also precludes infringement under the doctrine of equivalents, as established by the function-way-result test set forth in *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950), and reaffirmed in *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1344 (Fed. Cir. 2006). Those cases make clear that an accused product cannot infringe under the doctrine of equivalents where it does not perform substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed invention. Here, the differences in function, way, and result are fundamental and dispositive.

66.     Claim 12 of the '115 Patent recites substantially the same limitations as claim 1, including the requirement that the relief valve be "disposed on" the bellows assembly or facemask. Accordingly, the non-infringement arguments set forth above with respect to claim 1 apply equally to claim 12, and Plaintiffs' Choking Rescue Devices do not infringe claim 12, either literally or under the doctrine of equivalents.

67.     Because Plaintiffs' Choking Rescue Devices do not meet the limitations of independent claims 1 and 12, it necessarily does not infringe any dependent claims (claims 2–11 and 13–18). *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9, 1553 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."). In other words, because the Accused Products do not satisfy required limitations of independent claims 1 and 12, they cannot infringe any claim depending therefrom.

68.     Defendants' unsupported infringement allegations on the Amazon platform have caused Plaintiffs to face an imminent and substantial risk of an infringement lawsuit and have resulted in the deactivation of Plaintiffs' Amazon seller account.

69.    Pursuant to the Declaratory Judgment Act, Plaintiffs request a judicial determination and declaration that Plaintiffs' Choking Rescue Devices do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any presumably valid claim of the '115 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.    Declaring that Plaintiffs' Choking Rescue Devices do not infringe any of the claims of the '115 Patent;

B.    Issuing preliminary and permanent injunctions ordering Defendants to withdraw all Amazon infringement complaints lodged against the Plaintiffs' Choking Rescue Devices based on the '115 Patent, and to refrain from lodging any further infringement complaints regarding the same;

C.    Declaring this an exceptional and awarding Plaintiffs of their costs, expenses, and reasonable attorney fees incurred in this action pursuant to 35 U.S.C § 285;

D.    Awarding pre-judgment and post-judgment interest; and

E.    Awarding Plaintiffs such other and further relief as this Court deems is just and proper.

## JURY TRIAL DEMAND

Plaintiffs do not demand a jury trial because this action seeks purely declaratory relief. To the extent any issue is later deemed triable by jury as a matter of right, Plaintiffs request a jury trial on those issues only.

Respectfully submitted,

Moshe Mortner
Mortner Law Office
30 Wall Street, 8th Floor
New York, NY 10005
877-365-2177
moshemortner@mortnerlaw.com

Benjamin I. Dach
Pierson Ferdinand LLP
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
ben.dach@pierferd.com

*Attorneys for Plaintiffs*
*HEFEI SHUMI KEJI YOUXIANGONGSI and*
*QUANZHOUYUANCHEKEJIYOUXIANGONGS*I

**EXHIBITS**

Exhibit A – '115 Patent (U.S. 10,025,115)

Exhibit B – APEX submission Agreement

Exhibit C – Amazon APEX decision (No. 17444842391, June 17, 2025)

Exhibit D – Amazon takedown notice to Quanzhou (Sept. 4, 2025)

Exhibit E – Torti (U.S. Pat. No. 4,768,237) Figure 2

Exhibit F – Stevenson (WO 2007/073211) Figure 7

Exhibit G – Claim Chart for Claim 1 (with embedded thumbnails; full-size images at Ex. G-1 to G-4)

Exhibit H – Claim Chart for Claim 12 (with embedded thumbnails; full-size images at Ex. H-1 to H-4)

Exhibit I – Plaintiffs' Device Working Principle (annotated image)

Exhibit J – Plaintiffs' Device Features (annotated image)